IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNIE M. STITES,** | 3:11-CV-01422 RE |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MICHAEL J. ASTRUE,**<br>Commissioner of Social Security, | |
| Defendant. | |

**REDDEN,** Judge:

Plaintiff Jennie Stites ("Stites") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

## BACKGROUND

Born in 1960, Stites has a high school education, and has past relevant work as a

1 - OPINION AND ORDER

bartender and a waitress. In December 2008, Stites filed an application for SSI benefits, alleging disability since January 1, 2006, due to knee swelling, back/neck pain, muscle spasm in arms, pinched nerve causing headaches and squint, and post traumatic stress disorder. Tr 142. Her application was denied initially and upon reconsideration. After a February 2011 hearing, an Administrative Law Judge ("ALJ") found her not disabled in an opinion issued in February 2011. Stites's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ'S DECISION

The ALJ found Stites had the medically determinable severe impairments of degenerative disc disease of the cervical spine with left C5 radiculopathy; a history of heart surgery post stabbing injury; a history of left clavicle fracture; hepatitis C, Baker's cyst of the knee, post traumatic stress disorder; major depressive disorder; and polysubstance abuse. Tr. 19-21.

The ALJ determined that Stites retained the residual functional capacity ("RFC") to perform a reduced range of light work, with the additional limitations that she can stand and walk for up to two hours in an eight hour workday; she could occasionally crawl, stoop, crouch, kneel, or climb ramps or stairs; she should not climb ladders, ropes, or scaffolds; she could occasionally reach overhead with the left hand; she was limited to simple entry level work with no more than occasional interaction with the public and coworkers, and she would be expected to miss several days of work each week due to her impairments. Tr. 22-25.

The ALJ found that Stites could not perform her past relevant work. Tr. 25. At step five, the ALJ found that Stites was unable to perform work existing in significant numbers in the national economy. The ALJ determined that, including Stite's substance abuse, a finding of

disabled was appropriate.

However, because Stites abused drugs and alcohol, the ALJ had to determine whether drug and alcohol abuse were factors material to the determination of disability. The ALJ found that, if Stites discontinued drug and alcohol abuse ("DAA"), she would have the same RFC as described above except that she would not be expected to miss several days of work each week. Tr. 27-32. The ALJ found that, if Stites discontinued DAA, she would not be able to perform her past relevant work. Tr. 32. The ALJ found that if Stites discontinued DAA, she would be able to perform work existing in the national economy. The ALJ concluded that substance abuse was material to the determination of disability, and Stites was therefore not eligible for SSI.

The medical records accurately set out Stites's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Stites contends that the ALJ erred by: (1) improperly finding DAA can be separated from her mental limitations; (2) improperly evaluating the severity of her mental limitations; and (3) formulating an inaccurate RFC.

### I. DAA and Mental Limitations

The Act and the Commissioner's regulations prohibit payment of benefits when drug and alcohol use is a material factor in a claimant's disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935. The Social Security Administration Emergency Teletype regarding DAA provides that, when it is not possible to separate mental restrictions and limitations imposed by the DAA and

3 - OPINION AND ORDER

the mental disorders shown by the evidence, a finding of "not material" is appropriate. Emergency Teletype on DAA, August 30, 1996, Answer 29.

The ALJ is responsible for resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sampler v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

Stites argues that her disabling limitations from mental illness are impossible to separate from limitations arising from drug and alcohol addiction. Stites contends that the psychological consultant Molly McKenna, Ph.D., found that it was not possible to separate the effects of drug use from the effects of Stites's mental disorders. Dr. McKenna conducted a Neuropsychological Screening Evaluation of Stites in December 2010. Tr. 698-713. Dr. McKenna reviewed extensive medical records and administered the WAIS-IV, the WMS-IV, the Reitan-Indiana Aphasia Screening Test, Trails A and B, the Rey 15-Item Test, the Word Memory Test, and the MMPI-2-RF. In the Discussion/Prognosis section of her report, Dr. McKenna states:

> Ms. Stites presents with symptoms of depression, including depressed mood, restricted appetite, poor sleep, anhedonia, isolation and occasional hypersomnia. She does endorse some periods of increased mood and energy, but these appear to be mostly responses to situational changes. She has a history of sexual abuse and domestic violence. Her behavior over the past many years has demonstrated she has difficulty trusting others and remaining engaged with services. She tends to have distorted

4 - OPINION AND ORDER

> and volatile relationships with others, even family. She often disengages from providers who try to help her. These symptoms are consistent with Posttraumatic Stress Disorder. Her history of homelessness, chronic drug use, domestic violence, and arguments with others certainly do suggest she has been exposed to a fair amount of traumatic or violent situations. Treatment records indicate that Ms. Stites' self-report of symptoms and progress in treatment has been inconsistent, however. For example, she terminated therapy with Andre Pruitt on 7/9/08, stating that she was doing well; however, on 7/14/08, she told her prescriber that she was having suicidal ideation the previous week, with irritability, anger, depression, and variable mood. Her ongoing drug use has made it difficult to get a clear picture of her baseline psychological symptoms. Until she is clean and sober, it may be difficult to pin down the most salient symptoms of her presentation.

Tr. 708-09.

In the last full paragraph of her narrative, Dr. McKenna wrote:

> At this time, the primary impediments to returning Ms. Stites to gainful employment are her physical complaints, high anxiety, poor anger control, depression, chronic substance abuse, and poor relationships with others.

Tr. 710.

Finally, Dr. McKenna completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental). Tr. 711-13. Asked to describe what changes would occur to the claimant's limitations if she were completely abstinent from DAA, Dr. McKenna wrote "Some mistrust/poor compliance with medical staff or authorities/supervisors might be improved if she was clean from all drugs/alcohol." Tr. 712.

The ALJ gave Dr. McKenna's opinion that Stites mental impairments result in no more than moderate limitations in her ability to understand, remember and carry out instructions, engage in work-related social functioning, and to respond to changes in a routine work setting significant weight. Tr. 31. The ALJ said that Dr. McKenna's "opinion that if the claimant were

5 - OPINION AND ORDER

clean from all drugs and alcohol, she would likely experience improved relationships with medical staff, authorities, and supervisors is also given significant weight." Tr. 31-32.

Stites argues that Dr. McKenna found it was "impossible" to separate the effects of Stites's drug use from her mental impairments. Plaintiff's Opening Brief, p. 24. This is not accurate. Dr. McKenna said that until Stites was clean and sober "it may be difficult to pin down" her most salient mental health symptoms.

The ALJ accepted Dr. McKenna's opinion, and expressly adopted her opinion that Stites's ability to work with medical staff or authorities/supervisors might improve if she were abstinent from substance abuse. Where, as here, the evidence is subject to "more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

## II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246

F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282.

The ALJ found that Stites's allegations as to the intensity, persistence and limiting effects of her symptoms not credible to the extent that they are inconsistent with the RFC. Tr. 28. The ALJ noted that Stites testified that she is disabled primarily due to pain, but chose to continue using marijuana resulting in the loss of the ability to obtain Percocet for pain since March 2010. The ALJ cited multiple dirty urinalysis, including methamphetamine. Several urinalyses were negative for Stites's prescribed drugs. The ALJ cited evidence that Stites declined treatment for hepatitis C and declined advice to abstain from alcohol. *Id.*

The ALJ noted that medical records did not support the claimant's allegations of

7 - OPINION AND ORDER

disabling pain. Stites has reported intermittent left arm pain. Tr. 501. Imaging showed a central disc bulge in the cervical spine causing only mild stenosis in the canal and right foramina. *Id.* Stites was not a surgical candidate and required only conservative treatment.

Stites alleged disabling knee pain. An October 2009 sonogram showed a Baker's cyst, but motor function and sensation were intact, with no vascular compromise. Tr. 638. She reported some pain on flexion, but her knees were stable. Tr. 639. The ALJ noted that Stites's gait has consistenly been described as normal. Tr. 28.

The ALJ cited Dr. McKenna's opinion that Stites tended to exaggerate her symptoms of distress. Tr. 29, 709. The ALJ noted that Stites exhibited drug-seeking behavior. Tr. 22. Exaggerating pain complaints in order to receive prescription pain medication is a clear and convincing reason to find a claimant not fully credible.

The ALJ noted that inconsistent statements made Stites less than fully credible. Tr. 29.

Stites argues that the ALJ improperly relied on her activities of daily living to find her less than fully credible. However, the ALJ cited sufficient and clear and convincing reasons to support the credibility finding even without consideration of the activities of daily living.

### III. Adequacy of the Hypothetical Question

Social Security Rule 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

A claimant's RFC is an assessment of what a claimant can do in a work setting despite her mental or physical impairments. Here, the ALJ found that if abstinent from DAA, the claimant retained the RFC for light work, restricted to not more than two hours of standing and walking in an eight-hour workday. She can occasionally climb, stoop, kneel, crouch, or climb ramps or stairs She should not climb ladders, ropes, or scaffolds. She can only occasionally engage in overhead reaching with the left arm. She is limited to not more than frequent fingering and handling with the left hand. She is limited to simple, entry-level work with no more than occasional interaction with the public and coworkers. Tr. 27.

Plaintiff argues that the ALJ failed to "assess" and "discuss" whether Stites is capable of working on a regular and continuing basis for 8 hours a day, 5 days a week. However, an RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.920(e); *see also* SSR 96-8p, *available at* 1996 WL 374184, at ✶ 1 ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule.").

Stites contends that the ALJ erred by failing to include all of her limitations in her RFC. Dr. McKenna found that Stites had moderate limitations in the ability to interact appropriately with supervisors and coworkers. Tr. 711.

The ALJ noted that Stites had such limitations and properly found that she could work with no more than occasional interaction with the public and coworkers. Tr. 27. The ALJ also gave significant weight to Dr. McKenna's opinion that, if abstinent from DAA, her mistrust of and relationship to authority figures and supervisors might be improved. Tr. 32, 712.

Stites argues that the ALJ erred by ignoring Dr. McKenna's diagnoses of somatoform

9 - OPINION AND ORDER

disorder, depressive disorder, and post-traumatic stress disorder. However, Dr. McKenna did not identify any functional limitations arising out these diagnoses, and the plaintiff does not point to any.

The ALJ's formulation of Stite's RFC is supported by substantial evidence.

## CONCLUSION

For the above reasons, the Commissioner's decision is affirmed and this matter is dismissed.

IT IS SO ORDERED.

Dated this 29 day of November, 2012.

JAMES A. REDDEN
United States District Judge

10 - OPINION AND ORDER